All right, our next case for argument is 24-1065, Wilson v. Corning. Counsel, how do I say your name? Padmanabhan, Your Honor. Mr. Padmanabhan, please proceed. Thank you, Your Honor. May it please the Court. Your Honors, Wilson was entitled to a jury trial for two independent reasons. First, Wilson sought a legal remedy, compensatory damages. That compensatory claim measured the amount that Wilson would have earned had Corning honored its obligations. In those calculations, of course, Wilson's damages expert considered Corning's profits because in her expert opinion, any agreement between Corning and Wilson would have involved profit sharing. Second... Can I ask you this? We don't have to reach that question if we determine that the statute of limitations defense was properly allowed, do we? Yes, Your Honor. It's not just a matter of whether the statute of limitations defense was properly allowed. You'd still have to reach this issue because if you find there is an actual legal remedy, then the statute of limitations defense would have had to be tried to a jury. So in that instance, the judge is not the right party to try to determine the facts of the statute of limitations defense. So the threshold question for you is to determine if there is a legal remedy. Are there any disputed facts with respect to the statute of limitations defense? Well, Your Honor, so there's two parts to that. So let me set the stage a little bit and I'll answer that question. So even on this record, there are disputed facts. But just so you understand the procedural posture in which this has come in for the statute of limitations. When the case started, there was no statute of limitations in the case. And what the judge effectively said was if we tried the statute of limitations defense under 15B, he would make the pleadings comport with the record. And so during the trial, we didn't put in any evidence on the statute of limitations specifically. So what is the standard of review that we have to apply to the judge's decision with respect to allowing that statute of limitations defense later? That would be an abuse of discretion. But in this case, my main point was going to be that the issue in front of him that he decided was a motion to amend to allow the statute of limitations defense. What he did was he went one step further. We have never as a side gotten to argue the substance of the statute of limitations defense. So we were very careful during trial not to try to put in any evidence on it or and object every chance we got. And so in the briefing, what we argued about was whether just on the motion to amend and there was no substantive argument that we provided on all the bases for why the statute of limitations alone would be applicable. But even on this record, the facts that are there for fraudulent concealment would be one basis to not be able to rule as a matter of law on the statute of limitations. Another probably easier one to find, which is undisputed, is Corning's own witnesses saying they started the development of the hyperstack in 2008, which falls within the period of the statute of limitations for the breach of contract claim. And again, that would be another reason why you can't decide the statute of limitations on this record. You can't decide it as a matter of law. The other independent reason that Wilson gets a jury trial is that under Minnesota law, unjust enrichment is a legal remedy when the calculation is a remedy for a violation of the Minnesota Trade Secrets Act and also when it's a remedy for a breach of contract. Because it's a legal remedy, Wilson, again, is entitled to a jury trial. And so, as for Corning's statute of limitations defense, if I'm right that Corning is entitled to a jury trial, then the facts relevant to the statute of limitations should have gone to that same jury. And the only reason the judge decided those factual disputes here was that there was no jury. So, I'm happy to talk about any of the other issues raised in the briefs, but these three issues alone resolve this appeal. Now, on that first issue, if you look at the record, and in particular our attachment of our experts, Wilson's experts, Ludington's report, you will see what is effectively a picture of a but-for analysis for reasonable royalty, which clearly is a legal remedy that would entitle us to a jury. When you're asking us to look at the record, do you want to point us to specific JA cases? Your Honor, I certainly can. So, Ms. Ludington's report, where the compensatory damages is being addressed, I think starts on page appendix 6484 and it continues through, I think, 6501. But the main thing to understand is if you look at that, if you look at her analysis, she does a reasonable royalty analysis under Georgia Pacific. She looks at actual agreements Corning entered into for this type of a situation. She looks at actual agreements Wilson entered into for this type of a situation. She analyzes Corning's internal statements for how it wanted to have a relationship with Mr. Wilson, or Wilson Wolf. And she looks at an actual proposal Wilson made to Corning for this very situation. Based on all of that, she comes to effectively a profit-sharing analysis. And that reasonable royalty analysis would certainly entitle John Wilson and Wilson Wolf to a jury trial. Now, separately, same with the Minnesota statute, if you look at the Cherney case that we cite on pages 13 and 14 of our brief, the Minnesota Supreme Court makes it very clear that for breach of contract, and in this case, that's the case the judge applied, that's a compensatory claim even if it's for unjust enrichment. And so under Minnesota law... Well, let me ask you why, if we agree with you on the breach of contract that your expert opined a reasonable royalty, not just disgorgement, and therefore it wasn't a purely equitable remedy, it was a legal remedy, over which you had a right to a jury trial. Suppose we agree on all that. What, if anything, does that do with the misappropriation claim? Because the misappropriation claim, to me, it seems, is clearly based on disgorgement, which is an entirely equitable remedy. And I don't see an error in the district court's assessments of the statute of limitations on the misappropriation claim. So let's just answer my specific question, which is, if I agree with you that there's a problem with regard to the breach of contract and that you had a right to a jury trial because you alleged damages that were compensatory in nature, what happens with the misappropriation claim under that articulation? So there's two bases then the misappropriation claim still goes forward to a jury. One is the Minnesota Uniform Trade Secrets Act, which defines damages to include unjust enrichment. And so as such, it's a legal remedy. Second is that even for misappropriation, you can still apply the reasonable royalty analysis. And as such, that would also entitle us to a jury. Now... Can you also point us to where in the record there is support for your arguments that you would have been properly applying with the statute of limitations for both the breach of contract and the trade secret misappropriation claim? I know that you mentioned a 2008 date, for example. Can you give me a J.A. site that would correspond? Yes, Your Honor. I certainly can give you a jury site for that 2008 date.  Your Honor, I'll give you a site, but just I can describe it for you. Do you want to give it to me? I'm assuming you're going to do rebuttal. Can you give it to me when you get up on rebuttal later? Yeah. Okay. But that evidence will show it's Corning's own witnesses confirming that they started the development of the hyper-stack product in 2008, which is a period covered by the non-use under the contract. And so a claim that we filed in 2013 would fall within the six-year statute of limitations. Are you making a corresponding sort of contention with respect to the trade secret misappropriation claim or are you agreeing that that all would fall outside the statute of limitations? The misappropriation of trade secrets claim, to be clear, Your Honor, the reason that would be still in the case is for fraudulent concealment. There's fraudulent concealment from 2007 to 2009. Even in the few facts that came in that we highlighted in our brief, there was a guy, Mr. Beck from Corning, when Wilson first suspected there was a problem, called Mr. Beck at Corning. Mr. Beck told him he was going to specifically undertake an investigation, put people on that investigation. Two years later, he called Mr. Wolf and Mr. Wilson and Mr. Beck talked a couple of years later in 2009 and Mr. Beck assured him there was no problem. So that is just on this bare record without us putting in any evidence, there's evidence to show there's fact issues on whether fraudulent concealment applies or not. And if fraudulent concealment is found, the statute is told and the misappropriation of trade secrets have been filed within the statutory period. And there was obviously a laches defense that was raised. Do you contend that there are different facts that would have been presented with respect to that as opposed to with respect to a statute of limitations defense? So, Your Honor, the laches defense, I want to be very clear. So the laches defense was in the case from the beginning. And our defenses to the laches defense were unclean hands on the part of Corning, the delay was not unreasonable, and there was no prejudice to Corning. All three defenses fully cover laches and are only for laches. They don't apply to the statute of limitations. The statute of limitations was never in the case. And so we didn't take on the additional burden of trying to show that there was actually fraud on the part of Corning to have fraudulent concealment. So when you say are there additional facts, it would be the focus of the presentation. That's why I started with the procedural posture of how we came into the trial and how consistent we were during the trial objecting to any evidence relating to the statute of limitations because it was not in the case. The judge had warned us if we had put it in the case and responded, it would be part of the case. And so the first instance, it was just simply fighting about whether it was going to be in the case at all. Counsel, you're well into your rebuttal time. Would you like to save some? Yep, I would. Okay. Ms. Coberly, please proceed. Good morning, Your Honor. In the interest of time, may it please the court, I'm Linda Coberly for Corning Incorporated. Beginning with the statute of limitations defense, there was no prejudice here. Can we just start with his point that even if there was no abuse of discretion in allowing it, it should have been tried to a jury and not decided by the judge? So, first of all, that's an argument that was not made in the district court. And I just want to address counsel's point that he didn't have an opportunity to argue the merits of the statute of limitations defense. That's just not true. We moved after trial, we moved several times before and during trial. Wait, let me just be clear because this is, that's what I really care about is whether this, assuming I find no abuse of discretion, whether it was wrong for the judge to decide it. So when you moved again to amend the complaint and allow the statute of limitations defense after the trial, their opposition didn't say that this should have been tried to the jury if it's allowed? It did not, Your Honor. And we moved, we filed two motions. We filed a 15B motion, which is part of what the judge specifically forecast for counsel before the trial began. The judge said, consistent with Rule 15B, the court will address any statute of limitations issues or evidentiary matters that arise. Okay, counsel, in your brief to us, in your brief to us here, in your red brief, I don't remember you saying they waived their now argument in their blue brief that there should have been a jury trial. We did not read the argument in the blue brief to include that argument. I'll be honest with you. If you look at the statute, if you look at the statement of issues in the brief, in the blue brief. I mean, page 21 is called Seventh Amendment right to a jury trial. I mean. I understand. And the argument they were making for a jury trial is that the, is that the remedy was actually, was legal and not equitable. Page 24 is Wilson-Wolf's request for reasonable royalties is a request for compensable damages and therefore a legal remedy for which Wilson-Wolf is entitled to a jury trial. Yes, they certainly made that argument. What I didn't see, Your Honor, is the argument that Judge Hughes is referring to, which is the argument that regardless of whether, that there had to be a jury trial on the statute of limitations independently. And if you look at the statement of issues, the only argument they raised, they don't take issue here with the fact that the judge resolved the statute of limitations as a matter of law. The statement of the issues says whether the district court erred in denying Wilson-Wolf a trial by jury on its contract and trade secret claims, even though Wilson-Wolf sought compensatory damages in connection with both claims. It doesn't mention the statute of limitations. Okay, well, here's the problem. So let's start with the complaint for me. I'll tell you what my problem is. Let's go to page 5164 of the complaint, counsel. Page 5164. This is where they lay out their breach of contract claim in their complaint. Do you have page 5164? Paragraph number four. Yes. Paragraph number four. I'm sorry. I'm reading from your argument. I'm sorry. Let me go to theirs. I wanted to go to theirs. Your Honor, I think I can shortcut this and answer your question directly. I'm not saying that they did not raise an argument below that they were entitled to a jury trial. They obviously did. I'm responding to Judge Hughes' question, which was did they argue in the district court that the statute of limitations issue itself should be tried to the jury? And the answer to that question is no. But they did argue that when you have a jury trial, the jury trial extends to everything. They argued that. They did argue that. That means everything is everything. They didn't argue that with regards to in opposition to your 15B motion. And they did not argue that in their blue brief to us. I do see it in the gray brief to us. I agree with you. And so if I could respond to the issue on the merits as well. I want you to go with me back to the complaints. Now, I found the page I wanted to be on. It's actually appendix to page 279. It is their complaint. It's paragraph 128. Corning breached the agreement by filing, this is their breach of contract, 896 and 347 provisional applications and by filing utility patents claiming priority to those. Well, those utility patents, as their filings show, some of them were filed in 2006. One of them was filed in 2010. It's the 572 patent. The one in 2006 was the 209 patent. All of those would be a problem for you under the statute of limitations argument. They made these arguments. I'm not making these arguments. They made those allegations. Yes. I think you're reading from the complaint. They made those allegations. Here's what happened after. I'm definitely reading from the complaint. Right. Here's what happened after the complaint. What happened after the complaint is that it became apparent and the district court held on a summary judgment motion that the last possible date of infringement was April 2005. And that's because on April 21, 2005, all of Wilson's trade secrets became public. Wilson's own patent application was published to the world on April 2005. So on summary judgment, before the jury issue was presented to anyone, on summary judgment, the court held that the last possible date of misappropriation was April 21, 2005. But this is not misappropriation. This is breach of contract. So to draw that connection, the same exact thing applies to breach of contract because, again and again in this case, plaintiff conceded as he had to that the design that became part of the hyperstat, which is what was launched in the later years, was complete by April 2005. And if I could read from the record, on page 4294 of the trial transcript, quoting Campbell, by the time Wilson's patent was published, John's insights had already motivated, led to, and contributed to Corning's new progress. Do we have access to the page you're reading from? No. You do. It's part of the trial transcript, and we will find the... Is it in the joint appendix is the question. Yes. No, it's not. It is not. I will also... So what I'm reading from right now, Your Honor, and we can provide these to you directly... I guess I just don't even understand your argument. Let me just make it simple for you. They made allegations in their complaint that are within the period and therefore not barred by the statute of limitations. They said when you filed certain patent applications, that constituted a breach of contract. Those patent applications were filed inside the window that would not be covered by the statute of limitations. The statute of limitations goes back to a certain date. These are more recent filings. They allege that those things constitute a breach of contract. They then allege that the damages they should be entitled to for those breach of contracts was a reasonable royalty, which is a legal remedy. I don't know. To me, that means they should have gotten a jury trial on all this. So I would love to give... There's several answers to what Your Honor just posed, and I would like to answer it very directly. After the complaint, they gave up those claims. They gave them up because they had to, because it became apparent... Show me exactly where they gave the claims up, because I see throughout the briefing, both before the court below and on us in appeal, that the filing of patent applications constituted a breach of contract. So how am I getting that wrong? Your Honor, the district court specifically found that the contract claim accrued in April 2005 because that was the last date, that was the last breach that Wilson attempted to prove at trial. That sounds like a question of fact. They alleged... I don't understand. So I'd like to separate out the individual issues, Your Honor. On the statute of limitations issue, by the time we got to trial, Wilson had stopped saying that there was a new breach in 2008. And because he couldn't say there was a new breach in 2008, at that point his information was not confidential. His information was not confidential in 2008. It was available to the public because it became available on April 21, 2005. So whatever happened... How did it become available? His patent application, which he had filed with the government, published to the world. His own patent application. The confidential information at issue in this case was contained in a patent application that had been filed and that was provided by Wilson to Corning. On April 21, 2005, that patent application ceased to be confidential. It became published to the world. After that date, there was no obligation under the contract as a matter of law for Corning to not use information. I will just step aside. Corning didn't use Wilson's information. But under the terms of the contract, once the information became public... So just to make sure I understand your argument. So you're saying, look, the complaint may have alleged things, which entitled them to a jury trial. And that's why they actually pled a jury trial and the judge didn't strike it at that time. Correct. The judge only struck the jury trial after these pleadings had ceased to continue to be at issue in the case by virtue of the information going public. Not exactly. Okay. The pleadings were the pleadings. Obviously, they were the pleadings because if the plaintiff had amended their complaint, we would have amended our answer. No, but you're... So, I mean, because my thing was I looked at this. I'm like, all right, he's got some allegations that include breach of contract that occurred within the period that is not barred by the statute of limitations. And he asked for a jury trial on those things. And he pled damages, which are reasonable royalty. I mean, you're never going to convince me the pleading is not for reasonable royalty. I read that expert report. I think that's reasonable royalty. I think that is a legal remedy that he is seeking, not an equitable remedy. So, upon that, you have no chance with me. So, don't spend any time on that for me anyway. But so, the question is does he have any claim that isn't barred by the statute of limitations for which that legal remedy is available? And the answer is no, Your Honor, because by the time we got to the jury motion, first of all, the court applied national presto. And national presto requires more than a pleading. National presto in the Eighth Circuit, which is the relevant regional circuit here, requires proof that a demand for damages or demand for disgorgement actually corresponds with damages. So, it's not enough. According to the Eighth Circuit, which is what binds this decision here, according to the Eighth Circuit, it is not enough as a matter of federal law for a plaintiff to say, oh, I believe it's a reasonable royalty. I believe I'm seeking, I intend to seek compensation. I think that you're wrong. I don't think the Eighth Circuit applies to patent damages or this kind of damages, do they? A reasonable royalty, I guess this is an appropriation. This is not patent damages, Your Honor. You're right, you're right. This is trade secret damages. Yeah, got it. And that makes a very big difference. No, that's okay. You got me corrected. That makes a very big difference for one very important reason, which is under the patent law, under 284, the court must award, at a minimum, reasonable royalty. That is not true under Minnesota trade secret law. And, of course, so we do look to the regional circuit. Okay, but let's assume I still think you're wrong, and let's assume that I still think those damages are a legal remedy. Does he not have a right to a jury trial? He does not, Your Honor, because of the statute of limitations. Let me – can I ask you this? Let's assume that there were – there's a – it's a little – I mean, I don't understand why the district court didn't just allow you to plead the statute of limitations and try it. It would have made this case a lot cleaner. But it seems to me your argument is that at least by the time you got to trial, there was no effort by the plaintiff to prove and act a breach of contract that fell within the statute of limitations period. And so even if there had been a right to a jury trial on that issue, because there clearly would have been a right to a jury trial on that issue, that the proof at trial shows that none of those acts would have been within the statute of limitations period. And therefore, when he granted your motion to dismiss for statute of limitations, which didn't seem to be opposed on the grounds that that very issue should have been tried in a jury trial, because there was no – at most, it's harmless error. I don't think you argued it that way necessarily, but I also did not see in their blue brief an argument that specifically we should have been – even if you allowed them to amend, that statute of limitations defense should have been tried to a jury trial. Sure, the overall argument about a jury trial stays consistent, but I don't see anywhere in the blue brief that says the district court erred in not allowing the statute of limitations defense to go to a jury after the amendment. I think that's exactly right. Is that because the undisputed facts are at trial, or at least all the evidence at trial shows whatever that April – whatever date you're talking about, that that's the last possible date for breach? Yes. And they didn't attempt to prove any breach dates after that? That's correct, because they conceded again and again at trial. Can you just show us some joint appendix pages that support up what you just indicated in the conversation that you had with Judge Hughes? I just want to be able to see the support. Yes. So what I would like to quote for you, and I don't know if the trial transcript is in the joint appendix. My colleague is looking for that right now. But if I could, for the purposes of right now, could I use the trial transcript pages and I will provide to the court a joint appendix page after the argument? So page 4294 of the trial transcript, counsel concedes that by the time the patent was published, the insights had already moted to, led to, and contributed to Corning's new products. The quote actually settled on the device design in March or April 2005. That's page 4295 of the trial transcript. Can your co-counsel be finding these pages in the joint appendix as you're shouting them out? Yes. Yes. Also, in the pretrial findings and conclusions offered by counsel before trial, they said that in March 2005 is, quote, when Corning had settled on the basic design for the device. Also, paragraph 549 of the pretrial findings and conclusions, and I quote, and this one is very important, quote, By April 2005, Corning had used Wilson Wolf's trade secrets without Wilson's consent to design Corning's hyper products. Not just the hyper flask, the first product, but also the hyper stack. It is true, of course, that the hyper stack device was a different version of the same technology. It was a larger footprint. But the basic design that Wilson says Corning took from him was for a particular multi-flask design. That design was complete by April 2005. That was not disputed at trial. So what is your response to the 2008 date? Just give me that response that opposing counsel was pointing to a 2008 date. They didn't argue it was a separate breach. They couldn't. They couldn't because the contract does not bar the use of information already available to the public. The judge held that as a matter of law in its opinion. The contract did not bar uses after April 2005. That's why. Do you know where we can find that? That holding? It's appendix 32 and footnote 3 on that appendix. That is the court's ruling that talks about that interpretation of the contract. All right, counsel, your time is up. No more to anything. Let's hear from your opposing counsel. Your Honor, page 38 of the blue brief, we actually point out that the court should vacate. This court should vacate the district court's determination on the statute of limitations because we get a jury trial. It's at the bottom of page 38. It's just a paragraph. Did you put that in your opposition to the motion to amend? In our opposition to the motion to amend? Did you tell the district court that you, even if he allowed you to amend or allowed them to amend and put in a statute of limitations, that it needed to go to a jury? So, Your Honor, at the time that we were—at the time we argued— You want to explain. I get it. Is there a yes or no, and then you can explain. Okay. I don't recall specifically saying to the district court, hey, we need to try the statute of limitations to the jury. Was that because the statute of limitations wasn't actually in the case at that point? Yes. Okay. That seems like a reasonable reason. That's the only reason. When they were arguing about getting it in, we were just fighting about whether that should be in. No, it's not. In response to a motion after the trial to amend and say, we want to impose a statute of limitations defense. I get it. You didn't have to specifically call it out because it wasn't in the case. As soon as they asked it to be in the case, did you tell the district court judge that even if he allowed it, it had to go to a jury? Your Honor, we didn't because at that point, the jury was struck, and we really thought the only thing we were fighting about was whether they still get to amend their pleading to include the statute of limitations. We thought there was going to be a second effort about what we're going to do for the record for him to decide it. Let me give you the citations in the record for this 2008 date. It's from page 23 of our reply brief, but if you look at appendix pages 9523 at its trial transcript page 1994 from lines 10 to 19, it'll say the hyperstats began working in 2008, and then you can also look at appendix pages 10665 to 10666 at pages 3136 line 10 to page 3137 line 10 for the same thing. What is your direct response to opposing counsel's argument that there was the finding with respect to the 2005 date? Okay, that's a great question, Your Honor. So on the 2005 date, let me clarify what happened in the order that opposing counsel is talking about. The judge made a determination for trade secrets to say any trade secrets we had because that application published in April of 2005 were public after 2005. We had to show misappropriation before April 2005 for those trade secrets, so that's separate. The contract, very different. The contract has notice provisions, a lot of other things, and even after trial, in our post-trial presentation, and one example of that is in APPX14025, we argue for breaches using that 2008 date, and so we've never given up. At trial, we didn't give it up. The only reason that 2005 date always sticks with everybody is part of this case is a trade secret case. The judge did have a ruling on the trade secrets and when they became public, and so part of what our burden of proof was was to show misappropriation by corning prior to that April 2005 date as to the trade secret claim. But as to the contract claim, that April 2005 date is not relevant for that, and we did have allegations and proof of additional breaches in 2008, which falls within the statutory time period. Okay, I thank both counsel. This case is taken under submission.